UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| Sonoco Products Company, | ) | C/A No. 4:12-790-RBH-KDW |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| | ) | |
| | ) | |
| Levent Guven, | ) | ORDER |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the court[1] on the Motion to Compel ("Motion") filed by Plaintiff, ECF No. 65, to which Defendant filed a response, ECF No. 69, and Plaintiff replied, ECF No. 73. The court held a hearing on May 20, 2014, at which time the Motion was taken under advisement. On June 9, 2014, Plaintiff filed a supplement to its Motion. ECF No. 79. Having considered the parties' arguments as well as their briefs and related filings, the court grants Plaintiff's Motion as set forth herein.

I.    General Background

Plaintiff Sonoco Products Company ("Sonoco" or "Plaintiff"), a South Carolina corporation headquartered in Hartsville, South Carolina, brought this lawsuit against Defendant Levent Güven ("Guven" or "Defendant") in June 2011, alleging the following causes of action: breach of the fiduciary duties of loyalty arising out of his employment relationship; breach of a

---

[1] This matter was referred to the undersigned on May 1, 2014. ECF No. 74.

written contract; and misappropriation of trade secrets. Compl., ECF No. 1-1. The case was served on Defendant in February 2012 and removed to this court on March 19, 2012. ECF No. 1. These claims stem from an employment agreement entered into between Sonoco and Guven in which Sonoco contends that Guven, a Turkish national lawfully admitted for permanent residence in the United States, violated the employment agreement with Sonoco when he formed and operated Konfida Ambalaj Tekstil San. Ve Tic. Ltd. Sti. ("Konfida") using Sonoco's trade secrets to be a direct competitor with Sonoco Ambalaj Sanayi ve Ticaret A.S. ("Sonoco Turkey"). Sonoco Turkey is a wholly-owned subsidiary of Plaintiff. *See* Order denying Mot. Dism., ECF No. 52 (denying Guven's Motion to Dismiss for *Forum Non Conveniens* or, in the Alternative, to Stay). Litigation between Guven, his business partner, Adem Gurarda, and Sonoco Turkey is also pending in Turkey. *See id.* at 2.

At issue are Defendant's responses to Plaintiff's First Set of Interrogatories and First Set of Requests for Production, both served on Defendant in December 2012. *See* ECF Nos. 65-2, 65-3. Defendant served several sets of responses to these interrogatories and requests for production. First Answers (Feb. 15, 2013), ECF Nos. 65-4, 65-5; Am. and Suppl. Answers (July 1, 2013), ECF Nos. 65-6, 65-7; Second Am. Resp. Reqs. Prod. (Oct. 29, 2013), ECF No. 65-8; Second Am. and Suppl. Answers (Dec. 20, 2013), ECF Nos. 65-9, 65-10; Third Am. and Suppl. Answers (Feb. 14, 2014), ECF Nos. 65-11, 65-12.

Prior to filing the Motion to Compel, the parties had an informal conference with United States District Judge R. Bryan Harwell regarding discovery disputes. Unable to resolve the disputes informally, Plaintiff filed the instant Motion on March 13, 2014.[2]

---

[2] In opposing Plaintiff's Motion, Defendant initially challenged it as being untimely pursuant to Local Civil Rule 37.01 (D.S.C.). Defendant's counsel withdrew the timeliness challenge at the hearing.

II.    Analysis

Parties in civil litigation generally enjoy broad discovery. *See Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Murray Sheet Metal Co., Inc.*, 967 F.2d 980, 983 (4th Cir. 1992) ("[T]he discovery rules are given 'a broad and liberal treatment.'") (quoting *Hickman v. Taylor*, 329 U.S. 495, 507 (1947)). In defining the breadth of discovery, Federal Rule of Civil Procedure 26(b)(1) provides the following guidance:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense—including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter. For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action.

Fed. R. Civ. P. 26(b)(1). If a party declines to answer an interrogatory or request for production, the serving party "may move for an order compelling an answer, designation, production, or inspection." Fed. R. Civ. P. 37(a)(3)(B). An evasive or incomplete disclosure, answer, or response, "must be treated as a failure to disclose, answer or respond." Fed. R. Civ. P. 37 (a)(4). "The scope and conduct of discovery are within the sound discretion of the district court." *Columbus-Am. Discovery Grp. v. Atl. Mut. Ins. Co.,* 56 F.3d 556, 568 n.16 (4th Cir. 1995) (citing *Erdmann v. Preferred Research, Inc. of Ga.,* 852 F.2d 788, 792 (4th Cir. 1988)). It is against this backdrop that the court considers Plaintiff's Motion.

In a nutshell, Plaintiff's requested relief concerns two broad areas: Defendant's discovery responses concerning Konfida information and documents arguably within Plaintiff's control as one of two managing partners of Konfida; and responses concerning information and documents Defendant within Plaintiff's personal knowledge including such information and documents purportedly obtained from Plaintiff. The court considers these in turn.

3

A.    Konfida Information and Documents

The crux of much of Plaintiff's Motion concerns Defendant's position that some of the information requested from him is not his to provide, rather, he submits it is information belonging to nonparty Konfida. Although Defendant generally concedes that, as one of two managers of Konfida, he has *access* to the requested information and documents, he submits he is unable to provide the information lest he become subject to potential civil liability and criminal consequences in Turkey. These requests seek information about Konfida's vendors, suppliers, customers, and other information Plaintiff seeks to prove both liability and damages in this matter.

In response to some requests, Defendant has objected, claiming information related to Konfida is unavailable because "Konfida is not a party to this action and no veil piercing theory has been raised." *See, e.g.,* Def.'s 2d Am. and Suppl. Answers 9, ECF No. 65-9.[3] Similarly, in objecting to some requests, Defendant indicated he had not personally maintained the potentially relevant documents. *See., e.g.,* Def.'s Am. Resps. 9, ECF No. 65-7 (responding to request for bills, correspondence, and similar items sent by Defendant or Konfida to any current or former Sonoco customer; in addition to other objections and responses, noting Defendant "has not personally maintained any such documents."). In his objections, Guven argues Konfida has two owners—himself and Gurarda—and that Gurarda is responsible for the manufacturing side, including vendors and salaries. *See* Def.'s 3d and Am. Answers 13-17, ECF No. 65-11.

In seeking to compel responses, Plaintiff argues the objection is invalid, and it is of no moment that no veil-piercing theory has been raised. Pl.'s Mem. 9-10. Plaintiff cites several

---

[3] Defendant's multiple responses to Plaintiff's discovery requests comprise over 200 pages. *See* ECF Nos. 65-2 through 65-12. The court's citations to exemplar requests and responses is not intended to be a complete listing of all responses at issue. *See infra* for response-by-response discussion.

persuasive cases in which courts required a defendant to respond to discovery regarding information held by a corporation in which the defendant was an officer or played a similar role, despite defendant's argument he did not have "control" of the documents. Pl.'s Mem. 9-11. Defendant responds, arguing he need not provide the information sought regarding Konfida's information about vendors, revenue, and the like because the information contains "confidential, commercial documents" and Guven is the only Defendant in this action, and in the course of his work, he does not have *personal* access to the documents requested." Def.'s Mem. 7, ECF No. 69 (emphasis added).

Of particular relevance to the issue of what documents and information Guven may be compelled to provide, the court notes the following from a recent case:

> [A] party answering interrogatories "is charged with knowledge of . . . what is in records available to it." [8B] Wright, Miller, Kane & Marcus, *Federal Practice and Procedure,*] § 2177 [(3d ed. 1998]. A party responding to requests for production must produce any documents in its possession, custody, or control. Fed. R. Civ. P. 34(a). **Control does not require legal ownership or actual physical possession of documents at issue;** rather "documents are considered to be under a party's control when **that party has the right, authority, or *practical ability* to obtain the documents from a non-party to the action.**" *Goodman v. Praxair Servs., Inc.,* 632 F. Supp. 2d 494, 515 (D. Md. 2009) (internal quotations omitted).

*Grayson v. Cathcart*, 2:07-00593-DCN, 2013 WL 1401617 (D.S.C. Apr. 8, 2013) (emphases added).[4]

1. Evidence and Argument Concerning Guven's "Control" Over Certain Corporate Information and Documents

In addition to statements in responses to discovery, Defendant argues that, "[a]ccording to Turkish counsel, [Defendant] could be subjected to criminal or civil penalties for providing

---

[4] Defendant's objections to providing information and documents from Konfida law extend to Plaintiff's Interrogatories and Requests for Production.

the requested Konfida information and documents." Def.'s Mem. 8, ECF No. 69. Defendant

explains, as follows:

> Unlike other foreign jurisdictions where protection of commercial secrets is
> regulated under separate regulations, in Turkey, commercial secrets are protected
> under the unfair competition section (No. 6102) of the Turkish Commercial Code
> (the "TCC"). According to Article 55 (d) of the TCC, illegal disclosure of
> production or commercial secret of the producer; particularly, disclosure or
> exploitation of such secrets obtained secretly or without permission of the right
> holder or any other illegal ways are against the principle of good faith and
> constitutes unfair competition. Article 62 of the TCC then provides that those who
> (i) intentionally commit the acts of unfair competition stipulated in Article 55; (ii)
> intentionally provide false or misleading information relating to its personal
> situation, products, business products, commercial activities and activities in order
> that its offers and proposal be given preference above its competitors; (iii) entice
> employees, officers or other workers to disclose their employers' or customers'
> production or commercial secrets; or (iv) have not prevented a punishable act of
> unfair competition performed by their employees, workers or representatives,
> and/or have not restored the action of the misrepresentation, will be punished by
> two years of imprisonment, or will be fined, accordingly. The civil consequence of
> disclosing commercial secrets is indemnification, which, as provided in Article 56
> of the TCC, may occur via a declaratory action, a specific action to prevent the
> unfair competition, an action for restitution, and/or an action for compensation of
> damages.[5] Moreover, information related to customers, contracts, commitments,
> vendors or contractors, or revenues relate to the protections provided in Article 55
> of the TCC.
> [5] In these actions, the Turkish Court may award payment of a specific amount for
> damages, condemnation of the act, and announcement of the decision by way of
> media.

Def.'s Mem. 8-9, ECF No. 69.[5]

Against that backdrop, Defendant argues he is not the "right holder for Konfida's

information and documents." Def.'s Mem. 9. He states although he and Gurarda own equal

percentages of Konfida, Gurarda is responsible for the manufacturing side of the business

---

[5] Defendant's responsive brief concerning Turkish law and its claimed impact on his ability to
respond to discovery includes no sworn statement of Turkish counsel, nor does it include copies
of the portions of the Turkish law on which he relies. After Plaintiff filed its reply, which
included the sworn declaration of Turkish counsel, Murat Karkin, ECF No. 73-3, Defendant filed
the sworn declaration of Turkish counsel Bige Goksel, ECF No. 76. Discussed in more detail
within, Attorney Goksel's declaration focused on somewhat different aspects of Turkish law than
that referenced in Defendant's brief.

(including vendor and salary information). Defendant states that, per Turkish law, the Turkish Trade Counsel "decides who the 'managing partner' is when there are only two members of the Board, and that member has the deciding vote." *Id.* (citing Turkish Trade Council law, No. 1-602, Article 624).[6] Defendant attaches a translated version of the October 8, 2012 "Decision" of the Turkish Trade Counsel that "appointed Gurarda as that managing partner[,]" Def.'s Mem. 9, ECF No. 69; Decision, ECF No. 69-1, explaining this appointment means "any decisions made on behalf of Konfida ultimately are made by Gurarda." Def.'s Mem. 9. Defendant also states "Gurarda has made it clear that he would not agree to this production." Def.'s Mem. 9.[7] Without the agreement of "right-holder" Gurarda, Defendant argues he "may not provide such information and documents." *Id.*

In its Reply, Plaintiff provided the declaration of its Turkish lawyer, Murat Karkin, to take issue with Defendant's arguments about control, ECF No. 73-3; after that, Defendant filed the declaration of Attorney Goksel to support Defendant's argument and to rebut Karkin, ECF No. 76-1.[8] Attorney Karkin first responds to Defendant's argument that the "Document" naming Gurarda as Konfida's Chairman of the Board is not an official appointment by a "trade council," as Defendant's memorandum indicated. Rather, Karkin explains that:

---

[6] Defendant does not attach a copy of the cited law.

[7] In the brief, Defendant indicated counsel was obtaining the affidavit of Gurarda on this point and would provide it when available. Def.'s Mem. 9 n.6. Defendant provided Gurarda's Declaration on May 12, 2014. ECF No. 76-1 (noting Gurarda is Chairman of Konfida's Board, has the deciding vote on matters when Guven and he disagree, and indicating he did not consent to Guven's request for "access to the Konfida documents for purposes of the above-captioned case" "due to confidentiality of Konfida's commercial secrets").

[8] Karkin represents Sonoco Turkey in litigation against Guven and Gurarda. Karkin Decl. ¶ 1, ECF No. 73-3. Goksel represents Guven and Gurarda in that litigation. Goksel Decl. ¶ 6, ECF No. 76. Both are licensed to practice law in Turkey and are fluent in English. Karkin Decl. ¶ 1, Goksel Decl. ¶¶ 3-4. Neither party has called the qualifications of these Turkish attorneys into question.

> [U]nder Turkish law and corporate procedure, the Decision document evidences only that Levent Guven and Adem Gurarda, as sole shareholders/managers, convened a meeting of their own "Assembly" for the company they own, each as co-equal shareholder, and voted to appoint Adem Gurarda as the chairman of board of managers of the company. The "Decision document does not reflect any official status conferred by any public or governmental body of or in Turkey. It simply means that Adem Gurarda is the Chairman of a "board" that has two members –Guararda and Guven.

Karkin Decl. ¶ 3. Karkin notes the document was voted on and filed October 8, 2012,[9] several months after this litigation had been filed and served on Guven. *Id.* ¶ 4. Karkin reviewed Turkish trade records that revealed Guven and Gurarda have 50/50 ownership of Konfida. *Id.* ¶ 5. Karkin indicated that, under Turkish law, both are authorized to "represent and bind Konfida with their individual signatures, for a term of three (3) years starting from May of 2012." *Id*. Because they can severally bind Konfida, Karkin noted that a "claim of confidentiality breach can only be brought by either Guven or Adem Gurarda, not someone else. Adem Gurarda also knows the dispute from the beginning who acted together with Guven." *Id.* As a "manager," Guven is entitled to access and may review any of Konfida's business records. *Id.* ¶ 6. Under Turkish law, these rights cannot be taken away. *Id.*

Karkin further declares that the document appointing Gurarda as Chairman confers only some administrative tasks upon him; it "does <u>not</u> subtract from Guven's plenary rights as manager of the company." *Id.* ¶ 7 (emphasis in original). Karkin offers the legal opinion that "[t]he statement in Defendant's Memorandum that Gurarda is the sole 'right holder' with respect to documents and records of Konfida is entirely inaccurate." *Id.* Karkin opines, "based on [his] experience and training and to a reasonable degree of certainty, the statement in Defendant's

---

[9] Although not discussed by the parties in their briefs, the court notes Gurarda's appointment as Chairman is effective for two years that began October 8, 2012. ECF No. 69-1. When the court inquired at the hearing as to what would happen when the two-year term expires this fall, counsel for Defendant indicated he was unsure.

Memorandum that Gurarda may prevent Guven from accessing the Company's records and documents is entirely inaccurate under Turkish law." *Id.*

Karkin continues by opining that, under Turkish law, accessing information for the purpose of responding to a court's request is not "unfair competition or a violation of Article 55(d) of the [TCC]." *Id.* ¶ 8. Karkin explains that Article 55(d) is the unfair competition law and does not apply to the case of trade secrets in the situation of a company owner or manager providing documents pursuant to court order. *Id.* Karkin opines, again based on experience and training and to a reasonable degree of certainty, that "Guven would not violate Article 55(d) of the [TCC] by disclosing the information in question in response to a Court order in the United States. The information required to be produced would not be obtained secretly or by improper means but by legitimate legal process." *Id.* Karkin concludes the declaration by noting the court could protect the produced information with the confidentiality order. *Id.* ¶ 9.

Relying on Karkin's declared opinions regarding Turkish law and the failings in Defendant's argument concerning the impact of Turkish law on his ability to respond to discovery concerning Konfida, Plaintiff submits Defendant has been unable to make a showing that he cannot produce the requested information. Pl.'s Mem. 12. Specifically, Defendant has not demonstrated the requested documents are "production or business secrets" subject to the TCC. Even if they were considered to fall under the TCC, Plaintiff argues production of the information would not amount to unfair competition because the information would not have been gained "secretly" or in an unauthorized manner. *Id.*

In response to Karkin's Declaration, Defendant filed the declaration of his Turkish counsel, Bige Goksel, on May 12, 2014. Goksel Decl. ECF No. 76. Responding to the Karkin Declaration, Goksel "clarifies" Karkin's interpretation of Article 55(d) of the TCC and its

applicability to information provided to a court. *Id.* ¶ 14. Goksel indicates the "correct statement should be: '[i]t [Article 55(d) of the TCC] does not apply to the case of the owner and manager of providing information under the supervision of a **TURKISH** court or when ordered by a **TURKISH** court to produce the information.'" *Id.* (footnote omitted; emphasis in original). Goksel continues by explaining that, "as a company incorporated under the laws of the Republic of Turkey, [Konfida] is only bound by the orders of Turkish Courts, not U.S. Courts. Therefore if the court is a Turkish court, Guven will not violate Article 55(d) of the [TCC] by disclosing information due to a court order." *Id.*; compare with Karkin Decl. ¶ 8. Goksel explains that "as a matter of sovereignty, the powers of a court in a specific country may be exercised only over the citizens of the said country." Goksel Decl. ¶ 15. He submits an interim decision from a U.S. Court is not enforceable in Turkey and a U.S. Court order is not "binding" on Konfida, unless it is recognized and enforced by Turkish courts. *Id.*[10]

Goksel then addresses the portions of Karkin's Declaration concerning the "Decision" filed with the Turkish Trade Counsel and Gurarda's being named Chairman of the Konfida Board. Goksel Decl. ¶¶ 17-20; compare with Karkin Decl. ¶¶ 3-5, 7. Addressing Karkin's point that the Decision was entered after this litigation had been filed and served, Goksel states that the timing of Gurarda as Konfida's Chairman does not matter. Goksel Decl. ¶ 17. Because the documents are being sought now, it matters only that Gurarda is Chair now. *Id.* Goksel opines that "production of Konfida documents to the U.S. Court is something that requires the approval of the council of directors." *Id.* ¶ 17. Goksel acknowledges that both Guven and Gurarda have

---

[10] Goksel indicates Turkey does not participate in the portion of the Hague Evidence Convention concerning execution of letters of request for obtaining pretrial discovery. Goksel Aff. ¶ 16. Guven's counsel also briefly noted this at the hearing. Plaintiff does not argue that the Hague Convention assists in its efforts to obtain the information it seeks, and consideration of the Hague Convention is not before the court in this matter.

the authority to represent/bind Konfida. *Id.* ¶ 18. He opines, however, that the decision to disclose confidential documents is a "managerial/administrative issue, necessitating resolution of the counsel of directors." *Id.* ¶ 18. Because Konfida's council of directors is comprised of only Guven and Gurarda, "Gurarda's vote, as chairman thereof, will supersede Guven's vote if they are in disagreement." *Id.* ¶ 18. Goksel notes that Karkin is correct in stating Guven can "control and examine" the Konfida documents when he wants to do so. *Id.* ¶ 19. However, Goksel opines that disclosure of confidential documents requires a "resolution of the council of directors." *Id.* ¶ 19. Goksel concedes the decision to appoint Gurarda as chairman was made by Guven and Gurarda themselves, rather than the TCC. *Id.* ¶ 20. However, Goksel indicates the TCC did require that such a document be filed and opines the appointment was in accordance with Turkish law. *Id.*

In support of its Motion, Plaintiff cites a factually similar case: *EnvTech, Inc. v. Suchard*, 3:11-CV-00523-HDM, 2013 WL 4899085 (D. Nev. Sept. 11, 2013). In *EnvTech*, the court found defendant had not made an adequate showing that he did not have control over the documents of a foreign corporation of which he was an officer. *Id.* at *7. The court noted it was suspect that defendant claimed he could not produce documents over which he should theoretically have control. *Id.* In that case, as in the case before the court, the defendant had responded to some discovery requests by referring the plaintiff to documents at the foreign corporation's place of business, while, on the other hand, advising plaintiff he could not provide the documents requested because his business partner would not permit him to do so. *Id.* ("It is inconsistent for [defendant], on the one hand, to advise [plaintiff] that [foreign corporation and defendant's co-director] have precluded him from providing [plaintiff] with responsive documents and will go so far as to sue [defendant] (or any other worker or manager of [foreign corporation], which

would necessarily include [defendant's partner] himself) if [defendant] provides [plaintiff] with any information about [foreign corporation], while on the other hand, directing [plaintiff] to contact [foreign corporation] to obtain the information."). In that decision, the court overruled the defendant-officer's objection that he could not provide the documents requested because he did not have control over them and ordered the defendant to provide updated responses to the discovery requests at issue. *Id.* The court further advised that, if defendant continued to maintain his position that responsive documents were not within his control, he was to provide the plaintiff with "verified documentation" to that effect and to "document efforts made to obtain the documents from [the corporation]." *Id.* The court further advised defendant that, "unless he can demonstrate substantive, good faith efforts to secure the information from [the corporation], the court is not likely to favorably receive any explanation of futility." *Id.*

At the hearing, Defendant made much of the fact that the *EnvTech* court permitted the defendant to provide additional information regarding his inability to control the corporate documents, pointing to the Gurarda Declaration provided in this matter. Gurarda declares that he and Guven are the only two members of Konfida's board, that he was "unanimously appointed" as Konfida's managing director, and that he "ha[s] the deciding vote" on company matters as to which Guven and he disagree. Gurarda Decl. ¶¶ 3-7, ECF No. 76-1. "Therefore," Gurarda declares, "Defendant Guven does not have personal access to any documents of Konfida without [his] approval." *Id.* ¶ 7. Gurarda indicates Guven asked for access to Konfida documents for purposes of this litigation, but that Gurarda did not give his consent to such production "due to the confidentiality of Konfida's commercial secrets." *Id.* ¶ 9. "Accordingly, Defendant Guven may not provide any information or documents related to Konfida, which is not a party to this case." *Id.* ¶ 10.

In *EnvTech*, in responding to discovery subsequent to the court's order, the defendant provided a declaration indicating the corporation's "Company Manager" had made it clear defendant could not produce the corporate documentation despite the court's order. *See* Suchard Decl., ECF No. 44 in *EnvTech*. The defendant also indicated he had telephoned and emailed the Company Manager, but had not obtained permission to produce the documents. *Id.* Subsequently, the plaintiff moved to compel the documents and moved for sanctions against defendant. Defendant filed no response, and the court granted the subsequent motion to compel. *See* ECF Nos. 150, 152 in *EnvTech.*

Plaintiff also cites *General Environmental Science Corp. v. Horsfall*, 136 F.R.D. 130, 133-34 (N.D. Ohio 1991), in which the court ordered the defendant owners and employees of a nonparty Swiss corporation to provide to plaintiff documents within their control relating to Swiss corporation and concerning alleged fraudulent scheme to appropriate plaintiff's trade secrets and proprietary information. In that case, it was claimed the corporation was a sham created to evade discovery and illegally compete with plaintiff, and Defendant distinguishes it on that point. Def.'s Mem. 10.

In the case at bar, Defendant is correct that Konfida already existed when suit was brought and that there is no claim Konfida itself is a "sham" corporation. *Id.* However, as Plaintiff notes, the "Decision" appointing Gurarda as chairman of the Konfida board was not filed with the Turkish authorities until October 2012, months after Defendant was served with this suit. Pl.'s Reply 73.

Although this chronology does not necessarily indicate an intent to evade discovery, it is relevant to the court's consideration. Also of note as the court considers this issue is the seeming "about-face" Defendant took regarding discovery responses and production of documents.

Defendant's responses went from indicating any available documents could be reviewed at Konfida's offices to taking that option away and indicating Turkish law, and the decision of Defendant's business partner, made these documents unavailable for Defendant to provide.

The court has closely considered Defendant's argument and evidence that Turkish law prohibits him from providing the requested information, as well as Plaintiff's argument and evidence on this point and overrules Defendant's objections based on his "lack of control" or inability to provide information based on Turkish law and Gurarda's "lack of agreement."

Although not addressed by either party, the court notes Federal Rule of Civil Procedure 44.1:

> A party who intends to raise an issue about a foreign country's law must give notice by a pleading or other writing. In determining foreign law, the court may consider any relevant material or source, including testimony, whether or not submitted by a party or admissible under the Federal Rules of Evidence. The court's determination must be treated as a ruling on a question of law.

Fed. R. Civ. P. 44.1.  Arguably, Defendant should have put Plaintiff on notice as to his reliance on Turkish law as a defense/objection to the discovery requests. In particular, the court notes Defendant's changed position regarding whether he would provide certain information and why or why not. For example compare Defendant's initial response to Defendant's Request for Production Number 10, ECF No. 65-5 (preserving objections and noting "documents and information responsive to this request, if any, can be made available for inspection at a mutually convenient time at the offices of [Konfida] in Bursa, Turkey.") with his amended response to Request Number 10, ECF No. 65-7 at 9 (responding to request for bills, correspondence, and similar items sent by Defendant or Konfida to any current or former Sonoco customer; in addition to other objections and responses, referring to "wealth of information and documents" made available in Turkish litigation, noting all such documents would be in hard copy in Turkish

language at Konfida's location; noting Guven "has not personally maintained these documents."). At the hearing, counsel for Defendant acknowledged that the offer to permit Plaintiff to visit Konfida's offices to review documents had been withdrawn. At this stage, the court notes Defendant has now set out his legal position through the declaration of attorney Goksel. In any event, Plaintiff has not raised Rule 44.1 at all, and the court finds it unnecessary to make a formal ruling regarding the sufficiency of Defendant's pleading pursuant to that Rule.

That stated, the court notes it is Defendant who has the burden "'of demonstrating that [the Turkish law on which he relies] actually bars the production or testimony at issue.'" *Strauss v. Credit Lyonnais, S.A.*, 242 F.R.D. 199, 207 (E.D.N.Y. 2007) (quoting *Alfadda v. Fenn*, 149 F.R.D. 28, 34 (S.D.N.Y.1993)); *cf. Riffe v. Magushi*, 859 F. Supp. 220, 223 (S.D.W. Va. 1994) (noting the "'great leeway' a federal court is given in the 'determination and application of foreign law'") (quoting *Argyll Shipping Co. v. Hanover Ins. Co.*, 297 F. Supp. 125, 128 (S.D.N.Y. 1968)).   As explained in *Strauss*, for Defendant to satisfy this burden, he must "provide the Court with information of sufficient particularity and specificity to allow the Court to determine whether the discovery sought is indeed prohibited by foreign law." 242 F.R.D. at 207. Defendant "must describe, '*inter alia*, the provisions of the foreign law, the basis for its relevance, and the application of the foreign law to the facts of the case.'" *Id.* (quoting *Rationis Enters. Inc. of Panama v. Hyundai Mipo Dockyard Co.*, 426 F.3d 580, 586 (2d Cir. 2005)).

Additionally, when considering a slightly different issue, the United States Supreme Court has noted that a foreign statute does "not deprive an American court of the power to order a party subject to its jurisdiction to produce evidence even though the act of production may violate that statute." *Societe Nationale Industrielle Aerospatiale v. United States District Court for the Southern District of Iowa,* 482 U.S. 522, 544 n.29 (1987) (finding evidence treaty

between United States and France was not sole manner of obtaining discovery from French manufacturer; parties could seek discovery using Federal Rules of Civil Procedure, notwithstanding France's so-called blocking statute that precluded disclosure of evidence).

      2. The Court's Ruling Regarding Guven's Production of Information and Documents from Konfida

Here, the court finds Defendant has not satisfied his burden of demonstrating Turkish law renders him unable to provide the information and produce documents. As an initial matter, the court notes that portions of Defendant's argument are contained only in his memorandum opposing Plaintiff's Motion, and are not repeated in the declaration of their Turkish counsel. *See* Def.'s Mem. 8-9. In his memorandum, Defendant submits that he cannot provide/disclose the Konfida information and documents because to do so would violate Article 55(d) of the TCC, in that "'illegal disclosure or production or commercial secret of the producer," particularly when obtained "secretly or without permission of the right holder or any other illegal ways," "constitutes unfair competition." Def.'s Mem. 8. According to the memorandum, those who intentionally violate Article 55(d) "will be punished by *two years of imprisonment* or will be *fined*, accordingly." Def.'s Mem. 8 (emphasis in original) (citing TCC Article 62). Explaining that the Turkish Trade Council had appointed Gurarda the partner with the deciding vote, Defendant indicated Gurarda had "made it clear he would not agree" to Guven's production of Konfida information in this matter. Def.'s Mem. 9 & n.6. Subsequently, Defendant supplied Gurarda's declaration indicating he "does not give his consent to production of any document related to Konfida before this Court due to confidentiality of Konfida's commercial secrets." Gurarda Decl. ¶ 9, ECF No. 76-1.

Even considering this portion of Defendant's Turkish legal argument at face value, the court is not convinced that the information and documents available from Konfida would be

protected by the TCC as cited by Defendant. The court is persuaded by the declaration submitted by Plaintiff's Turkish Counsel, Karkin, stating that Article 55(d) of the TCC does not apply when providing information "under the supervision of a court or when ordered by a court to produce the information." Karkin Decl. ¶ 8. As Karkin notes, the information "would not be obtained secretly or by improper means[.]" *Id.* Defendant's Turkish counsel attempts to qualify or "correct" Karkin by agreeing that Article 55(d) would not apply to Konfida information only if it were a Turkish court because Konfida is "only bound by the orders of Turkish Courts, not U.S. Courts[.]" Goksel Decl. ¶ 14. However, Goksel seems to base his "correction" on principles of sovereignty, noting a United States court's decision would not be binding on Konfida rather than on the applicability of the TCC. *Id.* ¶ 15.

None of this convinces the court that Turkish law prevents Guven from providing the documents. Even assuming, *arguendo*, that *Konfida* is bound only by orders of Turkish courts, Defendant has not met his burden of establishing that *Guven*'s provision of Konfida's information would violate the TCC. *See Strauss*, 242 F.R.D. at 207 (burden on party claiming protection of foreign law). Defendant has not demonstrated the information and documents to which Guven has access are protected under the TCC, nor has he shown that providing such information would amount to the "secret" disclosure of the information the TCC purportedly protects.[11]

As Plaintiff notes, counsel for Defendant had to admit that the "Declaration" naming Gurarda chairman of Konfida's board represented a joint decision of Gurarda and Guven, rather

---

[11]Rule 44.1 imposes no obligation on the court to conduct additional research regarding potentially applicable foreign law. *Loebig v. Larucci*, 572 F.2d 81, 85 (2d Cir. 1978) ("Rule 44.1 of the Federal Rules of Civil Procedure permits parties to present information on foreign law, and the court may make its own determination of foreign law based on its own research, but it is not mandatory that it do so.").

than a decision/appointment determined by the Turkish Trade Council. *See* Goksel Decl. ¶ 17. Further, through his Turkish counsel, Defendant concedes that he, as one of two managing partners, "may control and examine the documents of Konfida whenever he wishes to do so[.]" *Id.* ¶ 19. He does not concede that such "control" permits him to submit the documents in this litigation or give them to a third party; rather, his Turkish counsel submits that "[s]uch a decision would necessitate a resolution of the council of directors." *Id.* Goksel does not cite to any Turkish authority in support of the statement that provision of the documents would "necessitate" a "resolution of the council of directors[,]" nor does Defendant otherwise provide evidence that such a declaration is "required" or "necessitated" under Turkish law. Gurarda's statement in his declaration that Guven "may not provide any information or documents related to Konfida," because he has not given Guven permission to do so, Gurarda Decl. ¶¶ 7-10, is similarly unsupported in the record. Further, Gurarda indicates Guven requested access to the Konfida documents for the purposes of this case, but that he "do[es] not give his consent to production of any document related to Konfida before this Court *due to confidentiality of Konfida's commercial secrets.*" *Id.* ¶ 9 (emphasis added). If Gurarda purports to withhold the production to protect Konfida's "commercial secrets," that protection may be provided by the Confidentiality Order already in place in this case. *See* Confid. Order, ECF No. 33.

As Defendant has not satisfied his burden of demonstrating the Turkish law on which he relies prevents him from providing the information and producing the documents requested by Plaintiff, Plaintiff's Motion to Compel is *granted* on this ground, and Defendant's objections to Plaintiff's requests on that ground are *overruled*.

a. Konfida Information and Documents: Specific Requests for Production at Issue

At the hearing, counsel agreed that the following Requests for Production relate to Konfida information and documents and that the court's ruling on that issue would inform the ruling on that portion of Plaintiff's Motion: Request for Production Numbers 9, 10, 11, 12, 13, 14, 15, 16, 18, 30, 31, 34, 36, 38, 40, and 43.[12] *See* Pl.'s Mem. 5, 7, 9, 11, ECF No. 65-1; Def.'s Resp. 8 n.4, ECF No. 69. Accordingly, Defendant is to comply with the court's Order as more fully set forth below.

b. Konfida Information and Documents: Specific Interrogatories at Issue

Based on characterizations in their briefing, Interrogatories 3, 6, 12, and 13 all also concern Konfida information. However, as discussed in some detail at the hearing, the parties maintain differing concepts of what information is sought and would be required in answers to these interrogatories. Defendant also continues to advance his objections regarding these requests. Plaintiff also argues it should be entitled to an order requiring Defendant to respond to these interrogatories by providing the detailed information requested. Plaintiff submits Defendant could provide that information without actually copying Konfida documents and providing them to Sonoco. In response to that argument, defense counsel argues Defendant can provide only the information he can recall from memory but he could not provide what required him get documents from Konfida and produce them.

The court considers the interrogatories at issue in turn.

---

[12] At the hearing, counsel also included Request No. 26 among those concerning Konfida information and one as to which the court's ruling regarding the Konfida information would apply. However, in their briefs, the parties included Request No. 26 both as one concerning Konfida information/documents *and* as concerning documents Guven took or received from Sonoco. *See, e.g.,* Pl.'s Mem. 9, 11, ECF No. 65-1.

1.  Interrogatory Number 3

Interrogatory Number 3 provides as follows ("You" refers to Guven):

> Identify all past, present, and/or prospective customers of Sonoco that You, Konfida, or anyone acting on Your behalf, have solicited and/or retained on Your own behalf or on behalf of Konfida or any other company in which You have an interest, and for each, state: (a) the date of first contact; (b) each person involved in the contact; (c) whether any agreement or contract to provide goods or services exists and, if so, the date executed by each party; (d) the identity of the person who initiated the contact; and (e) how the contact was initiated.

*See* ECF No. 65-2.  Defendant responded to this interrogatory three times. *See* ECF Nos. 65-4 at 6-8, 65-6 at 8-10, and 65-11 at 4-7 for the full text of those responses. Defendant's most recent response included objections to the extent the interrogatory was overbroad and not calculated to lead to discoverable information as regards Plaintiff's "prospective customers," noting Defendant cannot have knowledge of what customers Plaintiff may intend to solicit in the future. ECF No. 65-11 at 5. Subject to those objections, and "to the best of [his] knowledge," Defendant provided a list of several customers and the first year they were contacted, thus responding to subsections (a) and (b) of the Interrogatory. *Id.* at 6. Regarding the remaining subsections, Defendant indicated he could not "state for certain" who was involved in contacting those customers, but he provided a list of "people at Konfida who are involved in the contact of [those] customers generally[.]" *Id.* at 6-7. Defendant noted three specific customers on whom he made first contact. *Id.* at 7. In response to subsection (c), Defendant indicated no agreements or contracts were ever entered as to customers. *Id.*

At the hearing, defense counsel pointed out that the most recent response had been provided pursuant to the parties' negotiation regarding discovery disputes. Plaintiff acknowledged that the response provided came close to being sufficient. Principally, Plaintiff sought the removal of Defendant's objections to Interrogatory Number 3, noting the information

was "knowable," and Defendant should be required to drop his objections and to indicate the response provided was complete. In addition, counsel submitted the answer should include the month and date of initial contact with the customers, particularly those listed as having been contacted in 2010 because Defendant worked for Plaintiff through April 2010. Defense counsel responds that Defendant has already provided the information he could provide regarding dates. Plaintiff also submits Defendant should be required to provide information as to whether the contact resulted in any agreement for goods and/or services and, if so when. At the hearing, defense counsel agreed that Defendant would provide that information.

<u>Court's Ruling Regarding Interrogatory Number 3</u>

Based on the ruling discussed above concerning Konfida information and documents, Defendant is *ordered* to provide full and complete responses to all subparts of Interrogatory Number 3. To the extent necessary or helpful, Defendant is to access Konfida information and documents to aid him in providing a complete response. Such response is to include the most complete date information available regarding the date of initial contact. As agreed at the hearing, Defendant is to provide information regarding whether any agreement of any type (not limited to a formal "contract") was entered and, if so, the date(s) of such agreement(s).

Defendant's remaining objection is that the question is overly broad and not likely to lead to discoverable information to the extent it asks for information regarding Sonoco's "prospective" customers. ECF No. 65-11 at 5-6. Defendant's objection is well taken. Plaintiff is ordered to provide a specific definition of "prospective customers" for purposes of this interrogatory.

2.   Interrogatory Number 6

Interrogatory Number 6 instructs Defendant to "[s]tate with specificity all revenues generated by You, Konfida, or any company in which You have an interest for each month from January 2007 through and including the present." In Defendant's most recent response, he states:

> The Defendant objects to this Interrogatory to the extent it is overly broad, unduly burdensome, harassing, oppressive, seeks information that is irrelevant and immaterial, seeks confidential proprietary information, and is not reasonably calculated to lead to the discovery of relevant or admissible evidence. The Defendant further objects on the grounds that no revenues generated by Defendant and/or Konfida would have been derived from sales made to current, former and/or prospective customers of Sonoco Products Company and that only a portion of the revenues generated by Defendant and/or Konfida would have been derived from sales made to current, former and/or prospective customers of Sonoco Turkey. Notwithstanding and specifically preserving these objections, Defendant states that revenues generated by the Defendant and/or Konfida in 2007, 2008 and 2009, to the extent there were any, were nominal at best. Manufacturing operations at issue herein, and revenues generated in connection with same, did not begin until mid-2010.
> Defendant further states that Sonoco Turkey and its attorneys have already had full access and opportunity to review, inspect and obtain information pertinent to revenues generated by the Defendant and/or Konfida in connection with litigation filed by Sonoco Turkey against Defendant. Defendant will supplement his response to this Interrogatory when or if additional Information, not previously available to Sonoco Turkey and its attorneys, becomes available.

ECF No. 65-6 at 12-13.

Plaintiff's counsel argued at the hearing that this information was crucial and that Defendant should be required to provide the detailed information requested. He notes the statement that revenues prior to 2010 were "nominal at best" is disputed in this matter. Plaintiff notes that the Confidentiality Order would protect any confidentiality concerns. In response, defense counsel seemingly abandoned any argument that the revenue information sought would not be "relevant" to this matter. Rather, he again argued this was information Turkish law did not permit Defendant to provide. Defense counsel conceded, though, that any such information that Defendant had in his head was "free game." Further, Defendant argued that, based on affidavits

filed in this litigation, it seemed Plaintiff already had access to Konfida's revenue information. Defense counsel argued Defendant could be deposed regarding what was "in [his] head," but that the responses already provided the information he had. Again, Defendant argued he could not provide detailed revenue information without violating Turkish law by accessing that information in Konfida's documents.

In response to the court's inquiry, Plaintiff's counsel advised that Plaintiff/Sonoco Turkey already had not obtained the revenue information. Rather, he noted the expert report to which Defendant referred could have meant Sonoco Turkey was able to view some information on a screen, but the expert was by no means referring to documents Plaintiff or Sonoco Turkey had. In any event, Plaintiff argued it remained entitled to receive the information in this litigation. Plaintiff also emphasized that it was entitled to an answer from Defendant that was "authoritative." Plaintiff further emphasized that it was entitled to have the information from Defendant provided in the form of an interrogatory response, requiring him to distill the information.

<u>Court's Ruling as to Interrogatory Number 6</u>

Pursuant to the court's ruling above concerning Defendant's being required to produce information and documents from Konfida, Defendant is hereby ordered to provide full and complete responses to all subparts of Interrogatory Number 6. To the extent necessary or helpful, Defendant is to access Konfida information and documents to aid him in providing a complete response. Such response is to include the most complete revenue information available, specified by month to the extent available.  In issuing this ruling, the court is aware that its rulings regarding the Requests for Production discussed above already require production of documents that may provide this requested revenue information. *E.g.*, Req. Produc. Nos. 9-12. With or

without the production of revenue documents, Defendant is required to provide a detailed written response to Interrogatory Number 6 that distills the revenue information.

Defendant's specific objections to Interrogatory No. 6 are overruled. The information sought is discoverable and provision of the information will be protected by the Confidentiality Order. Further, Defendant's "objection" that no revenue would concern customers of Plaintiff and only "a portion" of revenues would concern customers of Sonoco-Turkey—effectively a relevancy objection—is *overruled*. Plaintiff has demonstrated the need for specific revenue information in establishing its liability and damages case.

3. Interrogatory Numbers 12 and 13

Interrogatory Number 12 provides as follows:

12. Identify each and every person who has done work of any kind for Konfida at any time from January 1, 2007 through the present, and for each, (a) state the amount, value, and nature of the remuneration received for such work; (b) identify the date(s) of such work; and (c) identify the source of payment or other remuneration for such work.

In Defendant's initial answer, he stated Konfida "had no employees from 2007 until mid-2010, after which it began primarily employing blue-collar workers or laborers." *See* ECF No. 65-11 at 13-14. Defendant further indicated Konfida generally employed about 60 laborers at present, and indicated Plaintiff had been provided a list of Konfida's current employees. *See* ECF No. 65-11 at 14. In his second supplemental answer, Defendant maintained his prior objections and, noting Konfida was not a party to this litigation, further objected to the extent it sought information Defendant did not individually possess. *Id.* at 14.

Defendant's most recent response to Interrogatory Number 12 follows:

THIRD SUPPLEMENTAL ANSWER:
This Interrogatory is overly broad, vague, and unduly burdensome in its request for identification of "each and every person who has done work of *any* kind for Konfida at *any* time" over an almost seven-year period of time, and Defendant

objects to this Interrogatory on those grounds. (Emphasis added) Additionally, Defendant objects to the extent the Interrogatory is harassing and oppressive in requesting such information when such a wide breadth of information is not relevant to Sonoco's causes of action against Defendant in his individual capacity. Sonoco's claims cannot relate to employees of Konfida that have never worked for Sonoco. Moreover, the "amount, value, and nature of the remuneration received for such work" is not relevant to this matter and not reasonably likely to lead to the discovery of admissible evidence. How much money Konfida pays its employees has no bearing on this litigation, and Defendant does not have knowledge of how much each employee of Konfida is paid because Adem Gurarda manages salaries. However, it is Defendant's belief that the source of payment or remuneration for work for Konfida comes from the revenues made by Konfida, and employees are paid in accordance with their employment agreements. Finally, this Interrogatory is duplicative of Interrogatory No. 4 to the extent it is meant to inquire as to Defendant's knowledge of employees of Konfida who previously worked at Sonoco and the dates of their employment. To the extent this Interrogatory requests that information, Defendant craves reference to its supplemental answer to Interrogatory No. 4.

ECF No. 65-11 at 14-15.

Interrogatory Number 13 provides as follows:

13. Identify all vendors or contractors from which You, or anyone acting on Your behalf, has sought or obtained a bid, quote, or agreement to provide services or goods to Konfida and, for each, (a) state the date on which contact was made; (b) identify the person who made the contact and the person with whom it was made; (c) state whether an agreement or contract has been entered into; and (d) identify all documents or materials provided to the vendor or contractor to bid, price, or otherwise consider whether to perform services or provide goods.

In Defendant's initial answer, he objected, claiming that the interrogatory was overly broad and sought information not calculated to lead to relevant or admissible evidence and that it sought confidential proprietary information. Preserving those objections, Defendant referred Plaintiff to the "wealth of information and documents generated, filed, made available to and reviewed by Sonoco Turkey and Sonoco Turkey's attorneys in connection with litigation filed by Sonoco Turkey against Defendant[,]" and noted such documents "would be maintained in hard copy format in the Turkish language at the offices of Konfida." *See* ECF No. 65-11 at 15. In his second supplemental answer, Defendant maintained his prior objections and, noting Konfida was

not a party to this litigation, further objected to the extent it sought information Defendant did

not individually possess. *Id.* at 16. Defendant's most recent response to Interrogatory Number

13 follows:

> THIRD SUPPLEMENTAL ANSWER:
> Defendant maintains his objections to this Interrogatory to the extent it is overly broad, unduly burdensome, harassing, oppressive, seeks information that is irrelevant and immaterial, and is not reasonably calculated to lead to the discovery of relevant or admissible evidence. Specifically, as drafted, this Interrogatory is requesting information as to any vendors that Defendant or anyone acting on his behalf has ever "sought or obtained a bid, quote, or agreement to provide services or goods to" Konfida. Therefore, it is not limited to those vendors that Konfida actually works with but is requesting information on anyone with whom Konfida has thought about working. However, subject to and specifically preserving those objections, Defendant provides that his role at Konfida is to deal with sales-not production. Therefore, he is not dealing with Konfida's vendors and has no knowledge of every single vendor with whom Konfida has ever thought about working. Rather, obtaining vendors is Adem Gurarda's responsibility, such that Defendant has no knowledge of the dates on which contact was made with vendors; the person with whom contact was made at each vendor; and does not know and is not in possession of documents or materials provided to the vendor or contractor to bid, price, or otherwise consider whether to perform services or provide goods. However, Defendant does provide that the vendors he is aware of are the following: Garanti, Yapi Kredi Banks, Aveme, Huijung, Ahlstrom, Ferrara, and Koknar. To Defendant's knowledge, Adem Gurarda makes contact with all of Konfida's production vendors, such as those for raw materials, initially. However, to the extent there are vendors for office needs, office personnel makes those contacts. Defendant does not talk to any vendors. Additionally, it is Defendant's understanding that there are no contracts or agreements with the vendors; rather, purchase orders are made to the vendors when the purchases are needed.

*See* ECF No. 65-11 at 16-17.

At the hearing, Plaintiff explained that it sought specific information regarding those

persons, vendors, and contractors that did work for Konfida beginning in 2007 to determine how

Konfida could have ramped-up to production mode so soon after Defendant left Plaintiff's

employ. Plaintiff explained that it crafted Interrogatory Number 12 to focus on "persons" who

did work and Interrogatory Number 13 to capture the same information regarding those entities

or persons considered "vendors" or "contractors" in their business relationship with Konfida. Defendant stood on his objections, noting the request is overly broad to request such information as to every employee. However, Defendant suggested that, were Plaintiff to provide a more focused interrogatory that set forth specific inquiries as to specific time periods, he could attempt to respond more fully.

<u>Court's Ruling Regarding Interrogatory Numbers 12 and 13</u>

The court appreciates the cooperative spirit counsel showed in discussing these particular interrogatories at the hearing. With that spirit of cooperation in mind, Plaintiff is to craft a revised interrogatory that more succinctly conveys the information sought. As Plaintiff is focused on the time leading up to Konfida's beginning production in 2007, Plaintiff is to limit the time period accordingly.

In responding to Plaintiff's revised interrogatory, Defendant is reminded of the discussion at the hearing that information responsive to these queries potentially could be determined by a review of purchase orders and/or vendor or supplier codes. Defendant is admonished not to continue to parse definitions of whether formal "contracts" or "agreements" were entered. If, after receiving Plaintiff's revised interrogatory, Defendant is still unclear as to the information requested, in his answer to the revised interrogatory, Defendant should identify any ambiguity and the interpretation he made in formulating his response. Further, Defendant's prior objection that the information sought would be proprietary is *overruled*.

B.  Information and Documents Guven Purportedly Took or Received from Sonoco

The remaining discovery requests at issue concern information Guven purportedly took or received from Sonoco: Request for Production Numbers 2, 6-8, 17, and 26. *See* Pl.'s Mem. 7, ECF No. 65-1; Def.'s Resp. 5 n.3, ECF No. 69; Pl.'s Reply 2, ECF No. 73. Request   Number   2

seeks: "All documents taken or removed from Sonoco, or the offices of Sonoco, including but not limited to all client files, time records, invoices, notes, contracts, correspondence, e-mails, template, artwork, newsletters, prototypes, instructions, spreadsheets, or other document of any type whatsoever." Request Numbers 6, 7, and 8 expand upon that request and asks for documents that could have been created, based upon, derived from, incorporated into, summarized in, or reference any documents created by a contractor or employee of Sonoco or taken from Sonoco or originated from Sonoco. Request Number 17 asks for any documents that Guven could have received from an employee or contractor of Sonoco. Request Number 26 requests "[a]ll documents that refer or relate to Sonoco." *See* ECF No. 65-3 for complete list of Plaintiff's Requests for Production; *see* ECF No. 65-12 for full text of these Requests and Defendant's responses thereto.

Defendant's most recent response objects that Request Number 2 is overly broad and not calculated to lead to relevant or admissible evidence in that it seeks "'any document whatsoever' with respect to the items Defendant took upon his departure from Sonoco." ECF No. 65-12 at 5. Defendant's response continues: "Defendant provides he did not take any documents whatsoever other than what has been provided or is provided in these Responses." *Id.* He further indicates he did not personally keep any customer or client files. *Id.* at 5-6. Maintaining his right to supplement, "as discovery is ongoing," Defendant then lists eight categories of documents he has provided. *Id.* (citing to bates numbers of particular produced documents). His responses and supplemental responses to Request Numbers 6-8, and 17 are similar. *Id.* at 9-16. In response to Request Number 26, which seeks "[a]ll documents that refer or relate to Sonoco[,]" Defendant's latest response withdraws his prior responses and provides a revised objection and response. *Id.* at 20, 22-23. Defendant objects to the over-inclusiveness of the Request; however, he then

includes a list of documents he has produced, indicating those are "all the only documents he has[.]" *Id.* at 23.

In its brief, Plaintiff argues it is entitled to information about what Defendant took from Sonoco as it expects it is relevant to "support its claims that Defendant took and utilized valuable Sonoco information in violation of his fiduciary duty of loyalty, his obligations under the written employment agreement, Sonoco's basic property rights, and the law of trade secrets." Pl.'s Mem. 7, ECF No. 65-1. Plaintiff cites to Defendant's piece-meal production of responsive documents and notes the objections and responses were somewhat contradictory. Pl.'s Mem. 7-9 (indicating that, at one time, Defendant responded that he had no responsive documents unless inadvertent; then Defendant located and produced some information; and then Defendant provided even more information). Plaintiff focuses on the fact that Defendant continues to include objections to the requests and that Plaintiff cannot know when Defendant has provided all responsive documents in his possession. "Sonoco cannot be certain that all responsive documents have been produced until the Defendant removes his unfounded general objections to the requests and provides all responsive documents." *Id.* at 9. Plaintiff also notes Defendant produced some emails that referenced attachments but did not provide the attachments. *Id.*

In response, Defendant explains that he has provided responsive information when he located it, noting he has moved several times. Def.'s Resp. 6. Defendant does not dispute the discoverability of "documents that evidence[] the trade secrets Sonoco is alleging Guven took;" rather, he argues that some of Plaintiff's requests are overly broad and/or redundant, potentially covering anything that potentially references Sonoco and are without limit as to time, place, or subject-matter. *Id.*

At the hearing, Plaintiff reiterated its concerns regarding Defendant's piecemeal production. However, Plaintiff's counsel agreed that Defendant had and has a continuing duty to supplement his responses to discovery. Plaintiff argued that Defendant's objections to this group of requests needed to be withdrawn, essentially so the responses provide him no "safe harbor" if he locates documents that are less-than-favorable or in responding to questions at deposition or at trial. Defense counsel advised that it stood on the portion of the objections as to the overbreadth of some of the requests; however, he noted Defendant was producing everything he located.

<u>Court's Ruling on Guven Information</u>

Because Defendant affirms he has provided all responsive documents, the court finds it appropriate to strike his objections to Request for Production Numbers 2, 6-8, 17, and 26. *See, e.g.*, *Wapato Heritage, LLC v. Evans*, CV-07-314-EFS, 2008 WL 4460271 (E.D. Wash. Oct. 1, 2008) (granting defendant's motion to strike objections because plaintiff indicated it had provided all responsive information notwithstanding objections; denying as moot defendant's motion to compel for same reasons); *cf. Barb v. Brown's Buick, Inc.,* 2010 WL 446638 at *1 (E.D. Va. Feb. 2, 2010) (striking boilerplate "general objections" as well as "specific objections" that were just as vague and designed to obfuscate). This ruling should not be construed as agreement with Plaintiff's position that Defendant's continued production of responsive documents was improper. As noted at the hearing, parties have a continuing duty to supplement discovery responses.

III.    Conclusion

In summary, for the reasons set forth above, Plaintiff's Motion to Compel, ECF No. 65, is

hereby granted, as follows.[13]

1) Regarding Requests for Production concerning Konfida information and documents: As Defendant has not satisfied his burden of demonstrating the Turkish law on which he relies prevents him from providing the information and producing the documents requested by Plaintiff, Plaintiff's Motion to Compel is granted on this ground, and Defendant's objections to Plaintiff's requests on that ground are *overruled*. Defendant is ordered to fully respond to Plaintiff's Request for Production Numbers 9, 10, 11, 12, 13, 14, 15, 16, 18, 30, 31, 34, 36, 38, 40, and 43, no later than **July 18, 2014**.[14]

2) Regarding the specific interrogatories at issue:

   o Defendant is *ordered* to provide full and complete responses to all subparts of **Interrogatory Number 3**, as more fully discussed above, no later than **July 18, 2014**. Defendant's remaining objection—that the question is overly broad and not likely to lead to discoverable information to the extent it asks for information regarding Sonoco's "prospective" customers—is well taken. Plaintiff is *ordered* to provide a specific definition of "prospective customers" for purposes of this interrogatory by **June 25, 2014**.

   o Defendant is *ordered* to provide full and complete responses to all subparts of **Interrogatory Number 6**, as more fully discussed above, no later than **July 18, 2014**. Defendant's specific objections to Interrogatory No. 6 are *overruled*.

   o Plaintiff is *ordered* to craft a revised interrogatory that succinctly conveys the information sought in **Interrogatory Numbers 12 and 13**, as more fully discussed above, no later than **June 25, 2014**. Defendant is to provide a full and complete response to the revised interrogatory no later than **July 18, 2014**. If, after receiving Plaintiff's revised interrogatory, Defendant is still unclear as to the information requested, in his answer to the revised interrogatory, Defendant should identify any ambiguity and the interpretation he made in formulating his response. Defendant's prior objection that the information sought would be proprietary is *overruled*.

3) Regarding Requests for Production concerning information and documents Defendant purportedly took or received from Plaintiff: Because Defendant affirms he has provided

---

[13] Plaintiff moved for an award of attorneys' fees and costs for bringing this Motion. ECF No. 65. The court declines to order payment as Defendant's objections—though overruled—were substantially justified. *See* Fed. R. Civ. P. 37(a)(5)(A)(ii).

[14] The undersigned acknowledges this deadline is after the current discovery deadline set forth in the Fourth Amended Scheduling Order. ECF No. 61. Any further modifications to the scheduling order must be sought from Judge Harwell.

all responsive documents, the court finds it appropriate to *strike his objections* to Request for Production Numbers 2, 6-8, 17, and 26.

IT IS SO ORDERED.

June 18, 2014                                                   Kaymani D. West
Florence, South Carolina                                United States Magistrate Judge